## State of Connecticut *v.* John Thorpe
### (9783)

Speziale, C. J., Peters, Healey, Parskey and Shea, Js.

---

[1] General Statutes § 53a-71 (a) (1).

Argued October 6—decision released December 14, 1982

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *G. Douglas Nash,* assistant public defender, for the appellant (defendant).

*John H. Durham,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SPEZIALE, C. J.  The defendant, John Thorpe, was convicted by a jury of burglary in the second degree and of larceny in the first degree.[1]  He has appealed,

---

[1] Subsequent to the jury's return of guilty verdicts on the burglary and larceny charges, the defendant entered a plea of guilty to the second part of the information charging him with being a persistent offender.  The defendant has appealed only the burglary and larceny convictions.

claiming that the evidence against him was insufficient to sustain a verdict of guilty and that the trial court, therefore, erred in denying his motion for acquittal after the verdict of guilty. The defendant also claims error in the trial court's charge to the jury. We find no error.

The jury could reasonably have found the following facts: On the evening of September 21, 1978, Jane Weil of New Haven was preparing to go out. In doing so, she removed a necklace from her jewelry box located on the bureau of her second floor bedroom. Jane Weil left the house at approximately 8 p.m. Her husband and the children remained at home for the evening. She returned home between 12:30 a.m. and 1 a.m. on September 22, 1978. To avoid awakening her husband, she did not turn on any lights. At approximately 7 a.m. on September 22, 1978, Mrs. Sullivan, a neighbor whose property bordered on the rear of the Weils' yard, discovered the jewelry box lying in her driveway at the rear of her residence.

Summoned by Mrs. Sullivan, the Weils passed through a hole in the backyard fence separating the two yards and walked over to Mrs. Sullivan's driveway. The jewelry box was open and pieces of costume jewelry were scattered about. The more valuable jewelry had been taken. A police investigation revealed that a forced entry had been made through the screened porch at the rear of the Weil home.

## I

### FINGERPRINT EVIDENCE

The only evidence connecting the defendant John Thorpe to the crimes charged was a single fingerprint identified as his which was found on the jewelry box. The defendant does not dispute that

the crimes were committed, but claims that the state failed to prove beyond a reasonable doubt the identity of the defendant as the perpetrator of the crimes. The defendant cites the rule, recently confirmed by this court, that a conviction may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could have been impressed only at the time the crime was committed. *State* v. *Payne,* 186 Conn. 179, 182, 440 A.2d 280 (1982). In *United States* v. *Jones,* 433 F.2d 1107, 1108–1109 n.10 (D.C. Cir. 1970), a case cited by this court in its previous decisions, the court stated: "We are mindful that where a conviction rests solely on fingerprint evidence, the proof must demonstrate not only 'that at some time the defendant [ ] touched objects found at the scene of the crime,' but also that the objects 'were generally inaccessible to the defendant [ ] and that therefore the objects were probably touched during the commission of the crime.' *Borum* v. *United States,* 127 U.S. App. D.C. 48, 380 F.2d 595 (1967)."

In this case, the jury could reasonably have concluded that the defendant's fingerprint was not impressed on the jewelry box at a time other than during the commission of the crimes charged for the following reasons.

First, it is undisputed that the jewelry box was not accessible to the defendant *prior* to the burglary. The state presented evidence that the jewelry box had been given to Mrs. Weil seven years earlier, that it had been dusted and waxed weekly by the cleaning lady, and that it had never been out of the house prior to the incident. These facts distinguish this case from *State* v. *Mayell,* 163 Conn. 419, 311 A.2d 60 (1972), where we reversed a conviction which was based primarily upon fingerprint

evidence. In *Mayell* we noted that the fact that the defendant's fingerprints were found on the rear view mirror of the vehicle used in a robbery had no probative force because the defendant was regularly employed to drive the vehicle and was rightfully in it six hours before the crime was committed. *State* v. *Mayell,* supra, 426.

Furthermore, the box was not generally accessible to the defendant *after* the commission of the crimes. It is undisputed that the jewelry box was discovered lying near the front fender of the neighbor's car. The car was parked, front end in, on the left side of the garage which is located at the rear of the neighbor's house. The jewelry box was not visible from the street because the house blocks the line of vision from the street to the rear part of the driveway where the jewelry box was discovered. Tall hedges running along the property line obscure the view from the adjacent yards. The rear yards of the Weils' home and that of the Sullivans abut and are private residential properties. The small break in the fence separating the Weils' yard from the Sullivans' property receives limited use from neighborhood children and is not used as a general thoroughfare. The surrounding neighborhood is residential and receives only light vehicular traffic.

We recently reversed a conviction which was based solely upon fingerprint evidence. *State* v. *Payne,* 186 Conn. 179, 440 A.2d 280 (1982). In *Payne* there was no evidence limiting the impression of the defendant's fingerprints to the circumstances of the crime; however, there was evidence of the accessibility of the outside of the victim's car to the general public and to the defendant himself in areas frequented by him. In contrast, in the case before us, the state presented substantial evi-

dence of the inaccessibility of the jewelry box to the general public and, most importantly, to the defendant himself.

" 'A conclusion of guilt requires proof beyond a reasonable doubt; and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' *State* v. *Foord,* 142 Conn. 285, 295, 113 A.2d 591 [1955]; *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151 [1970]; *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258 [1966]; *State* v. *Annunziato,* 145 Conn. 124, 136, 139 A.2d 612 [1958]." *State* v. *Mayell,* supra, 427–28; *State* v. *Payne,* supra, 184. The evidence presented by the state, which greatly narrowed the time period and circumstances within which the defendant had access to the jewelry box, could reasonably have led the jury to exclude the hypothesis that the defendant's fingerprint was placed on the object at a time other than during the perpetration of the crime. The evidence against the defendant was sufficient to sustain the verdict. There is no error with respect to this claim.

## II

### CHARGE TO THE JURY

The defendant also claims that the trial court erred in its charge to the jury because the court identified for the jurors which party had requested which instruction.[2] The defendant argues that

---

[2] In the absence of the jury, after exception by defense counsel, the court explained: "It is a fact that I did give those instructions, but the main reason I tell them always that they are instructions given to me by the respective lawyers is because when—and I try to make a point of taking instructions from both sides, as long

because the court informed the jury who requested various parts of the charge, the entire charge was confusing and argumentative, and also that the charge was an abdication of the court's duty to explain the law to the jury.

In the case of *Gorham* v. *Farmington Motor Inn, Inc.*, 159 Conn. 576, 582, 271 A.2d 94 (1970), the court said: "Although we do not approve of such a procedure, in the absence of anything incorrect at law the giving of requests in this manner is not in itself reversible error, unless the jury were misled . . . . A charge is examined to see if it fairly presented the case to the jury in such a way that no injustice was done to the legal rights of the litigants." The court in *Gorham* noted as significant the fact that, "the [trial] court stressed in a supplemental charge to the jury the irrelevancy of which party had requested a charge, so even had there been error it was cured." Id., 582–83.

Applying the *Gorham* standards, we note that the defendant fails to allege that any of the requested instructions were incorrect at law. Furthermore, any danger that the jury might have been misled by the court's identification of the party which had requested a particular charge was dis-

---

as it's right and it's legal and it's the law—always I try to do that, and the reason I tell them what I do is because it is repetitious, in most instances, because usually I cover the area, or try to cover the area in my own instructions and then, if there is no objection, or I find nothing basically wrong with the instructions that were given me by the respective counsel, I am always glad to add these to it, so I make the point by saying, 'These are from the lawyers,' because it would strike me, were I on the jury, that this man is just giving us a repetition, that he's already said this in so many words, you understand. And that's why I do that."

pelled by the court's cautionary instruction[3] early in the charge and its curative instruction[4] given in its supplemental charge. A review of the entire charge reveals that the jury were not misled and that the charge fairly presented the case to the jury. Therefore, although we disapprove of the practice of identifying to the jury which party requested a particular charge; *Gorham* v. *Farmington Motor Inn, Inc.,* supra, 582; in this case the trial court did not commit reversible error.

There is no error.

In this opinion the other judges concurred.

---

[3] The court said: "Now, I am going to intersperse with my charge the requested charges given to me by counsel, by both Mr. Durham and Mr. Nash. They each have the right to put in their own requests for me to charge you with the law as they see it, and if these requests of theirs coincide with mine and they are not different in any way, although they may be somewhat differently worded, I grant them the opportunity of having me do this also."

[4] "With regards to the instructions that I have given you on the entire charge, I did comment to you that I had my own charge prepared and that each lawyer has the right to submit a request to charge, and these additional papers which each one submitted tell me what they think the law should be. As long as what they submit to me is the law and does not deviate from the law as I understand it, or as I give it to you, then it is my practice not to object or to refuse to give a charge from each of the lawyers here. It may be repetitious. For instance, with regard to circumstantial evidence, which is a big thing in this case, a big item in this case, I read my definition of circumstantial evidence, and I read Mr. Durham's definition and then I read Mr. Nash's definition. Basically they all say the same thing. The gist of each is the same thing, but each is worded somewhat differently. We all arrive at the same point.

"The reason I am saying that, I do not want you to feel we over burdened you, but the reason we gave you three sets of instructions with regard to the point is because I was asked to and it is my practice to do so. Don't feel that I laid extra stress on that area. I did so only because I was asked to do it, and the men here, what they gave me, each was right and each is designed to give me the law, which it did. That is why I gave it to you that way."