## STATE OF CONNECTICUT *v.* CHARLES COLEMAN (12287)

LAVERY, HEIMAN and SPEAR, Js.

Argued April 29—decision released August 2, 1994

*Bonnie L. Amendola,* special public defender, with whom, on the brief, was *Brian Preleski,* special public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John M. Waddock,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1),[1] assault in the first degree in violation of General Statutes § 53a-59 (a) (3),[2] and attempted robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3)[3] and 53a-49 (a).[4] The defendant

---

[1] General Statutes § 53a-101 (a) provides in pertinent part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with . . . a deadly weapon or dangerous instrument . . . ."

[2] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[3] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[4] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

claims that the trial court improperly (1) admitted testimony concerning three knives seized from the defendant's car, (2) instructed the jury with respect to the knives seized from the defendant's car and the partial palm print lifted from the bathtub in the victim's residence, and (3) concluded that the evidence presented by the state was sufficient to convict the defendant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim was asleep in her bed during the early morning hours of June 23, 1986, when she was awakened by the touch of a knife on her throat and a hand placed over her mouth. The victim struggled with her assailant and tried to grab the knife from him. During the struggle, the victim sustained several lacerations on her right hand and was struck in the face several times. When the victim was finally able to break free, she ran to the kitchen and screamed for help. She then fled to the bathroom with her assailant in pursuit. The victim told her assailant that she was having an asthma attack and needed her medication. He then told her she could "take care of [her] business," and he returned to the bedroom in search of money.

The victim left the water running in the bathroom sink, wrapped a towel around her bleeding hand, ran to the front door, unlocked it and exited her first floor apartment. Once outside, she rang the bell for the upstairs apartment where her parents lived. When they failed to respond immediately, she ran to her father's parked car, and crawled underneath it. She remained there for "quite a while" before emerging to flag down a truck driver who radioed for police.

When the police arrived, they found the front door unlocked and no one inside the victim's apartment. They also discovered that the bathroom window was wide open even though the victim had left it open only

a few inches before retiring to bed. At the scene, the victim described her attacker as a black male wearing a face cover that felt like a ski mask and a cotton sweat-suit. She estimated that he was about five feet eleven inches tall and of average weight.

The police obtained a partial latent palm print from the victim's bathtub that matched the defendant's left palm print. The location of the print indicated that it was placed there from inside the tub, consistent with someone entering through the bathroom window. On July 8, 1986, the police seized three knives from the defendant's car pursuant to a search warrant issued with respect to other crimes. The defendant was sub-sequently convicted and this appeal ensued.

## I

The defendant first claims that the trial court improperly admitted testimony describing three knives seized from the defendant's car. In particular, the defendant argues (1) that the knives were seized in violation of the fourth and fourteenth amendments to the United States constitution and article first, § 7, of the Connecticut constitution, and (2) that evidence of the knives was irrelevant and highly prejudicial. Although we agree that the trial court improperly admitted the testimony concerning the knives, we conclude that the error was harmless.

## A

The defendant moved to suppress the three knives seized during the search of his car. The defendant argued that the search warrant, although it permitted a search of his residence, did not specify his car as a place to be searched. He claims that the only reference to his car is found on two pieces of paper appended to the affidavit and the search warrant. Thus, he argues that the authorization to search his car, if it existed at

all, came from the attachments to the warrant. He claims that the attachments lack the necessary signatures and oaths required for the search of any premises and that they are not dated. In addition, he argues that because the warrant did not incorporate the attachments by reference, the court cannot consider them in determining the validity of the warrant.

At the suppression hearing, the trial court determined that the attachments to the search warrant were proper and authorized the search of the defendant's automobile and the seizure of the three knives therein. The trial court's determination was a finding of fact that will not be overturned unless it was clearly erroneous. *Adriani* v. *Commission on Human Rights & Opportunities,* 228 Conn. 545, 548, 636 A.2d 1360 (1994); *State* v. *Torres,* 197 Conn. 620, 625, 500 A.2d 1299 (1985). "This court cannot retry the facts or pass upon the credibility of the witnesses. . . . *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [181 Conn. 217, 220, 435 A.2d 24 (1980)]." (Internal quotation marks omitted.) *Carol Management Corp.* v. *Board of Tax Review,* 228 Conn. 23, 41, 633 A.2d 1368 (1993). "When a factual issue implicates a constitutional claim, however, we review the record carefully to ensure that its determination was supported by substantial evidence. *State* v. *Northrop,* 213 Conn. 405, 414, 568 A.2d 439 (1990) (reviewing factual findings in fourth amendment claims)." *State* v. *Greenfield,* 228 Conn. 62, 68–69, 634 A.2d 879 (1993). Upon review, we conclude that the trial court correctly denied the motion to suppress.

The trial court found that the attachments to the affidavit contained the requisite initials of the affiants, two officers of the New Haven police department, and of Judge Ronan of the Superior Court after he found probable cause for the search and took the officers' oaths. The trial court also found that the attachments were affixed "at the precise spot on the first page [of the

affidavit] where the description of the places to be
. . . searched is set forth and there is no more room
in that space on the page and this is then attached
adding some words describing the house . . . and a
1968 Chevrolet two door sedan, color red, bearing iden-
tification number . . . 344-DUP.''

The court further found that although the warrant
provided sufficient space to describe the victim's resi-
dence, it did not provide sufficient space to describe
the defendant's automobile. The exact description of
the automobile contained in the first attachment was
thus placed in a second attachment and affixed to the
portion of the warrant where the description of the
places to be searched is located. This second attach-
ment also contained the requisite initials of the affiants
and of Judge Ronan.

Despite the defendant's contention to the contrary,
the court found that the body of the affidavit contained
a detailed description of the defendant's automobile.
Although the court did concede that ''it would be bet-
ter practice to make some reference to the fact [that
there are attachments] or put the date on the [attach-
ments],'' it nevertheless concluded that the attachments
were clearly a part of the warrant and thus the auto-
mobile was specifically designated as a place to be
searched.

The trial court's findings were supported by substan-
tial evidence and therefore were not clearly erroneous.

### B

Although the search of the defendant's vehicle was
proper, the testimony concerning the three knives dis-
covered therein should not have been admitted because
the state failed to establish a nexus between those
knives and the crimes with which the defendant was
charged.

At trial, the state offered the testimony of Detective James Stephenson of the New Haven police department, a participant in the inventory search of the defendant's car on July 8, 1986. The defendant objected on the ground that there was no evidence connecting the knives found in his car to the crimes charged against him and that these knives were irrelevant and highly prejudicial. The objection was overruled on the ground that the knives were relevant to show the "accused possessed an article with which the particular crime charged may have been accomplished," and that "the accused had the means to commit the crime." Further, the court concluded that the probative value of such evidence outweighed its prejudicial nature. The defendant took an exception. Stephenson then testified that the knives found in the defendant's car were a survival knife with a sheath found in the front of the car on the left side, a sheetrock knife with a blue handle found in the glove compartment, and a brown pocketknife found in a tool pouch in the trunk. The state chose not to offer the knives into evidence.

In determining the admissibility of evidence, "[t]he trial court has broad discretion to determine both the relevancy and remoteness of evidence." *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Shaywitz* v. *Singing Oaks Day Camp, Inc.,* 8 Conn. App. 71, 74, 510 A.2d 1013 (1986); *State* v. *Payne,* 219 Conn. 93, 114, 591 A.2d 1246 (1991).

There is nothing in the record to suggest that the knives found in the defendant's car had any connection to the crimes committed against the victim.

Although the victim testified that she was awakened in her apartment by an assailant who was holding a knife against her throat and that during a struggle with him her right hand was slashed by the blade of the knife, the state never connected the fact of the defendant's possession of three knives with the commission of the crimes for which he stood charged. The knives were discovered in the defendant's car more than two weeks after the victim was assaulted, the victim never described the knife used by her assailant, and the state never argued that one of the defendant's knives was used in the assault against the victim.

The state nevertheless contends that the testimony regarding the knives discovered in the defendant's car was admissible to show that, since the defendant possessed the knives, he possessed the means of committing the crimes charged. See *State* v. *Thomas,* 205 Conn. 279, 283–84, 533 A.2d 553 (1987); *State* v. *Smith,* 198 Conn. 147, 157, 502 A.2d 874 (1985); *State* v. *Villafane,* 171 Conn. 644, 675–76, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Corbett,* 12 Conn. App. 217, 219, 530 A.2d 208 (1987); *State* v. *DiStefano,* 7 Conn. App. 726, 731, 510 A.2d 995 (1986). The state maintains that the fact that none of the knives could be positively identified as the one used in the crime affects the probative weight of the evidence *and not* its admissibility. *State* v. *Corbett,* supra, 221.

In each of the cases on which the state relies, there was some evidence linking the seized item or items to the crime charged. See *State* v. *Marra,* 222 Conn. 506, 610 A.2d 1113 (1992) (witnesses testified that sneaker found in Long Island Sound was identical to one victim was wearing when he was assaulted by defendant);

*State* v. *Jeffrey,* 220 Conn. 698, 704, 601 A.2d 993 (1991), cert. denied, U.S. , 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992) (urine stained blouse worn by victim admissible where victim testified that defendant urinated on her during sexual assault); *State* v. *Thomas,* supra, 205 Conn. 283 (witness testified that clothesline rope seized from defendant's basement looked like rope used in crime charged); *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987) (evidence that handcuffs found on victim were same brand as those shipped to federal correctional institution where defendant had been previously employed); *State* v. *Villafane,* supra, 171 Conn. 675 (crime charged was committed with handgun and defendant admitted to possession of handgun one day after shooting); *State* v. *Ortiz,* 14 Conn. App. 493, 499–500, 542 A.2d 734 (1988) (witness testified that he was beaten with stick and stick was found near crime scene); *State* v. *Corbett,* supra, 12 Conn. App. 220 (shotgun shells and pellets seized from defendant's bedroom were kind used in crime charged).

It is error to allow into evidence testimony concerning articles seized from the defendant that tend to indicate criminal propensity when those articles are not connected to the commission of the crime charged. *State* v. *Ferraro,* 160 Conn. 42, 45, 273 A.2d 694 (1970); *State* v. *Johnson,* 160 Conn. 28, 31, 273 A.2d 702 (1970). Thus, Stephenson's testimony concerning the three knives found in the defendant's car should not have been admitted because the state failed to produce evidence connecting the knives with the assault of the victim. See *State* v. *Onofrio,* 179 Conn. 23, 31, 425 A.2d 560 (1979); *State* v. *Ferraro,* supra, 45; *State* v. *Johnson,* supra, 32. We conclude, therefore, that the trial court abused its discretion in admitting Stephenson's testimony concerning the three knives.

Our analysis, however, does not end here. Having concluded that the trial court improperly admitted testimony concerning the knives seized from the defendant's car, we must next determine whether such an error was harmful. We hold that it was not.

"When, as is true here, an error in a criminal case does not involve a constitutional violation, the burden is on the defendant to demonstrate the harmfulness of the court's error. The defendant must show that it is more probable than not that the erroneous action of the court affected the result [of the trial]. . . . *State* v. *Hoeplinger,* 27 Conn. App. 643, 649, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); see also *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980)." (Citations omitted; internal quotation marks omitted.) *In re Jose M.,* 30 Conn. App. 381, 390–91, 620 A.2d 804, cert. denied, 225 Conn. 921, 625 A.2d 821 (1993).

The defendant has failed to demonstrate how the admission of Stephenson's testimony was harmful to him. Stephenson's testimony was limited to a brief description of the knives. It was not the type of evidence "that [would] have a tendency to excite the passions, awaken the sympathy, or influence the judgment of the jury . . . ." *State* v. *Onofrio,* supra, 179 Conn. 32; *State* v. *Ferraro,* supra, 160 Conn. 45.

In *Ferraro,* the court found harmful a witness' testimony that the defendants had been living in an apartment where pistols, ammunition and a ski mask were found concealed in the ceiling above a closet because it was highly inflammatory and may have led the jury to believe that the defendants were violent individuals. Unlike the evidence in *Ferraro,* however, Stephenson's testimony was not inflammatory so as to lead a jury to infer that the defendant was a violent person simply because he possessed three knives. Moreover, the

jury never saw the actual knives as the state chose not to put them into evidence. Cf. *State* v. *Girolama,* 197 Conn. 201, 207–208, 496 A.2d 948 (1985); *State* v. *Acklin,* 171 Conn. 105, 114–16, 368 A.2d 212 (1976).

The state's evidence linking the defendant to the crime included the evidence that the bathroom window was found opened much wider than the victim had left it when she retired, that the defendant did not have permission to enter her apartment, and that the defendant's latent left palm print was discovered in the bathtub. The only reasonable inference that the jury could have drawn from this evidence is that the defendant entered her apartment through the window and inadvertently left his palm print in the bathtub during the commission of the crimes charged.

Testimony was elicited that the location of the print indicated that it was placed there from the inside of the tub, consistent with someone's entering through the bathroom window directly above the tub. In light of this evidence, we cannot say that the improper testimony briefly describing three knives more probably than not affected the result. See *State* v. *Castonguay,* 218 Conn. 486, 505, 590 A.2d 901 (1991); *State* v. *Vilalastra,* 207 Conn. 35, 47, 540 A.2d 42 (1988). Because the defendant has failed to meet his burden of proving that the error was harmful, his claim must fail.

## II

The defendant next claims that the trial court improperly instructed the jury concerning (1) the partial palm print found on the victim's bathtub and (2) the knives seized from the defendant's car. We disagree that the charge concerning the fingerprint evidence was improper. Although we agree that the charge concerning the knives was improper, we conclude that the error was harmless.

## A

The defendant submitted a proper written request to charge on the fingerprint evidence, which the trial court declined to give. "It is well established that when a proper request to charge is filed [pursuant to Practice Book § 852] and the trial court has failed to charge the jury in the exact language of the request, the test is whether the court's instructions properly covered the substance of the written request. . . . A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . . [Our Supreme Court] has often repeated that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . It is the trial court's responsibility to instruct the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration under the offenses charged and upon the evidence. . . . A claim of error in jury instructions must be reviewed in the context of the charge as a whole." (Citations omitted; internal quotation marks omitted.) *State* v. *Arena,* 33 Conn. App. 468, 488–89, 636 A.2d 398, cert. granted, 229 Conn. 918, 644 A.2d 914 (1994).

At the close of evidence, the defendant submitted the following written request to charge: "Fingerprint evidence, standing alone, is not sufficient to sustain a conviction of the crime charged. In addition to the evidence of a palm print of the defendant on the bathtub, you must also find that the print could only be placed there when the crime was committed. *State* v. *Payne,* 186 Conn. 179, [182, 440 A.2d 280] (1982); *State* v. *Thorpe,*

188 Conn. 645, [648, 453 A.2d 88] (1982); *State* v. *Manley,* 195 Conn. 567, [585, 489 A.2d 1024] (1985)."

The trial court declined to instruct the jury as the defendant requested and, instead, provided its own instruction concerning the palm print evidence. The trial court instructed the jury in part as follows: "A conviction may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could have been made only at the time the crime was committed, which is what the state claims it has proven in this case. Therefore, if you conclude that the state has shown the defendant left his palm print on an incriminating object, in this case the bathtub in [the victim's] bathroom, and that the only reasonable explanation for the presence of that print is that the defendant placed it there while he was in the house committing the crimes charged, then you must find the defendant guilty. If you find that the evidence reasonably fails to prove to you that the print was— left by the defendant during the commission of the crimes, then you must find the defendant not guilty." The defendant took an exception to the charge.

The defendant claims that the trial court's instructions on the issue of fingerprint evidence was an incorrect statement of the law and insufficient to properly guide the jury. In comparing the defendant's request to charge with that given by the trial court, however, it is apparent that the essence of the request was given, albeit not in the precise language submitted by the defendant. The challenged instruction was more detailed and specific than the defendant's request, but nevertheless contained a correct statement of the law. "[A]ny semantical discrepancy between the instruction as given and the rule as stated in both *State* v. *Payne,* supra, [186 Conn. 179] and *State* v. *Thorpe,* supra, [188 Conn. 645] cannot be considered reversible error." *State* v. *Manley,* supra, 195 Conn. 585.

In light of the trial court's instruction as a whole, we conclude that the charge given by the trial court was correct in law and sufficiently guided the jury on the issues presented at trial. *Skrzypiec* v. *Noonan,* 228 Conn. 1, 18, 633 A.2d 716 (1993); *Hall* v. *Burns,* 213 Conn. 446, 482, 569 A.2d 10 (1990).

## B

The trial court further instructed the jury that "[t]here was testimony from Detective Stephenson that he found three knives in the defendant's car about two weeks after the incident [at the victim's] home. There was no evidence which directly established that any one of those knives was the knife used by the intruder. However, evidence indicating that a defendant possessed an article, a knife, with which the particular crimes charged may have been accomplished, is generally relevant to show that the defendant had the means to commit the crime. The weight you choose to give this evidence is up to you. And you should consider in evaluating that evidence that the knives were not found in the car until two weeks after the incident on June 23, 1986." The defendant properly excepted to this charge.

The defendant argues that the charge as given was contrary to law because it failed to mention that the state must establish some link between the evidence seized and the crime committed in order for the evidence to be admitted. He contends that no permissible inference could have been drawn by the jury with respect to the three knives.

Because the testimony concerning the knives was improperly admitted into evidence, the instruction concerning the knives was also improper. "We have recognized [however] that an erroneous charge is not always harmful." *State* v. *McDonough,* 205 Conn. 352, 356, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988); *State* v. *Rivera,* 24 Conn.

App. 670, 677, 591 A.2d 440, cert. denied, 219 Conn. 914, 583 A.2d 139 (1991). The test for harmfulness is whether there is a reasonable possibility that the improper instruction contributed to the conviction. *State* v. *Hoeplinger,* 206 Conn. 278, 294, 537 A.2d 1010 (1988); *State* v. *Shifflett,* 199 Conn. 718, 751–52, 508 A.2d 748 (1986). There was substantial circumstantial evidence in this case demonstrating that the defendant was the perpetrator of the crimes charged. In light of this, we conclude that the improper instruction concerning the knives did not affect the jury verdict.

## III

The defendant's last claim is that the evidence introduced at trial was insufficient for a jury to conclude that he was at the victim's apartment when the crimes were committed. At the conclusion of the state's case-in-chief, the defendant moved for a judgment of acquittal, claiming that the evidence of his partial palm print found inside the victim's bathtub was not sufficient to sustain a conviction. The trial court denied the motion. After the verdict, the defendant again made a motion for judgment of acquittal on the same grounds, which was also denied.

"We employ a two part test in reviewing claims relating to the sufficiency of the evidence. *State* v. *Young,* 29 Conn. App. 754, 767, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993); *State* v. *Cruz,* 28 Conn. App. 575, 578, 611 A.2d 457 (1992). We first construe the evidence presented at trial in a light most favorable to sustaining the verdict. *State* v. *Young,* supra [767]; *State* v. *Cruz,* supra [578] . We then determine whether, from the evidence and all the reasonable inferences which it yields, [the jury] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . *State* v. *Young,* supra [767]; see also *State* v. *Joyner,* 225 Conn. 450,

455, 625 A.2d 791 (1993); *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Crosswell,* 223 Conn. 243, 249, 612 A.2d 1174 (1992)." (Internal quotation marks omitted.) *State* v. *Ash,* 33 Conn. App. 782, 787, 638 A.2d 633 (1994). The probative force of the evidence is not diminished if it consists in whole or in part of circumstantial evidence rather than direct evidence. *State* v. *Sommerville,* 214 Conn. 378, 390, 572 A.2d 944 (1990); *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); *State* v. *Maxwell,* 29 Conn. App. 704, 708, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied,    U.S.    , 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993). It is not one fact, but the cumulative impact of a multitude of facts that establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Sinclair,* supra, 576.

"[A] conviction may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could only have been impressed at the time the crime was perpetrated." *State* v. *Santangelo,* 205 Conn. 578, 598, 534 A.2d 1175 (1987); *State* v. *Payne,* 186 Conn. 179, 182, 440 A.2d 280 (1982). "[W]here a conviction rests solely on fingerprint evidence, the proof must demonstrate not only that at some time the defendant . . . touched objects found at the scene of the crime, but also that the objects were generally inaccessible to the defendant . . . and that therefore the objects were probably touched during the commission of the crime." (Internal quotation marks omitted.) *State* v. *Thorpe,* supra, 188 Conn. 648, quoting *United States* v. *Jones,* 433 F.2d 1107, 1108–1109 n.10 (D.C. Cir. 1970).

The defendant contends that his palm print could have been left on the bathtub *after* the crimes were committed, during the time period when the victim ran out of her apartment and the police arrived. The victim estimated that she was attacked between 2:30 and

3 a.m., and that she hid under her father's car "for quite a while" before flagging down a passing truck. The police arrived on the scene at 4:17 a.m. The defendant posits that since the victim left her front door unlocked when she fled, it is reasonable to presume that he could have entered her apartment after her departure and before the police arrived at the scene, and left his palm print on the inside of her bathtub.

The defendant's reliance on *State* v. *Mayell,* 163 Conn. 419, 311 A.2d 60 (1972), is misplaced. In *Mayell,* our Supreme Court reversed a conviction based primarily on fingerprint evidence. The court noted that the fact that the defendant's fingerprints were found on the rearview mirror of the vehicle used in a robbery had no probative force because the defendant was regularly employed to drive the vehicle and was rightfully in it six hours before the crime was committed. Id., 426. Here, in contrast, the defendant's palm print was lifted from the interior of the victim's bathtub, a permanent fixture in her private residence, inaccessible to members of the general public. The victim testified that she lived alone and was the only person who used the bathtub. In addition, she testified that she did not know the defendant and had never given him permission to enter her apartment.

Despite the defendant's contention to the contrary, there is substantial evidence from which the jury reasonably could conclude that the defendant's palm print was not impressed on the bathtub at a time other than during the commission of the crimes. The victim testified that before retiring to bed on the evening of June 22, 1986, she locked all of her doors and left her bathroom window open a few inches. When the police arrived after the attack, they discovered that the bathroom window was open wider than the victim had left it. A partial palm print, identified as the defendant's, was lifted from the victim's bathtub. The location of

the print indicated that it was placed there from the inside of the tub, consistent with someone's entering through the bathroom window directly above the tub.

Here, the evidence could reasonably have led the jury to exclude the hypothesis that the defendant's palm print was placed on the bathtub at a time other than during the perpetration of the crime. Accordingly, the evidence against the defendant was sufficient to sustain the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.