STATE OF CONNECTICUT *v.* CHARLES COLEMAN
(13103)

O'Connell, Spear and Freedman, Js.

Argued February 15—officially released July 9, 1996

*Richard Emanuel*, assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial,[1] of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[2] burglary in the second degree in violation of General Statutes § 53a-102 (a),[3] sexual assault

[1] In July, 1986, the state filed a substitute information charging the defendant with burglary in the first degree, sexual assault in the first degree, unlawful restraint in the first degree and robbery in the third degree. The defendant pleaded not guilty to each of these offenses. On May 27, 1987, the defendant changed his plea of not guilty to all counts to guilty to counts one, two and four, pursuant to *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The trial court subsequently denied the defendant's motion to withdraw his guilty pleas. This decision was affirmed on appeal. *State* v. *Coleman*, 17 Conn. App. 307, 552 A.2d 442 (1989).

The defendant then filed a petition for a writ of habeas corpus with the United States District Court for the District of Connecticut, which ordered the state to permit the defendant to withdraw his guilty pleas. On July 21, 1992, the defendant appeared before the court and changed his plea from guilty to not guilty to all counts of the substitute information, and elected a trial by jury. The state subsequently filed a substitute information charging the defendant with burglary in the first degree, burglary in the second degree, sexual assault in the first degree, unlawful restraint in the first degree and robbery in the third degree.

[2] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

[3] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

in the first degree in violation of General Statutes (Rev. to 1985) § 53a-70 (a),[4] and unlawful restraint in the first degree in violation of General Statutes (Rev. to 1985) § 53a-95 (a).[5] On appeal, the defendant claims that (1) the evidence was insufficient to establish his guilt of the crimes charged, (2) the trial court improperly admitted into evidence certain items that were never connected to the commission of the crimes charged, (3) his rights were violated by the convictions of second degree robbery and unlawful restraint in the first degree, (4) the trial court improperly charged the jury regarding burglary in the first degree and the definition of reasonable doubt, and (5) his rights were violated by the destruction of physical evidence. We conclude that the evidence was sufficient to establish the defendant's guilt of the crimes charged. We agree, however, with the defendant that the trial court improperly admitted certain items of evidence. Accordingly, we reverse the judgment of the trial court.[6]

The jury reasonably could have found the following facts. On July 7, 1986, the victim lived with her mother on the first floor of a two-family house in New Haven. In the early morning hours of July 7, 1986, the victim was awakened by an assailant, who put his hand over

[4] General Statutes (Rev. to 1985) § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of the use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[5] General Statutes (Rev. to 1985) § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury."

[6] We address the defendant's claim regarding sufficiency of the evidence first since the defendant would be entitled to an acquittal if the evidence was, in fact, insufficient. In light of our conclusion that the trial court improperly admitted certain items of evidence, however, we need not address all of the defendant's remaining claims.

her mouth. The assailant told the victim that if she did not do what he said, her mother would be harmed. Although the victim was verbally threatened, she never saw a weapon and was never threatened with a weapon. The assailant pulled the victim to the edge of the bed and had sexual intercourse with her, which caused her pain. The victim knew that her assailant ejaculated during the intercourse. After he was finished, the assailant threw a blanket over the victim, and told her not to move and to wait at least five minutes. He also asked the victim where her money was and she told him.[7]

The victim lay on the bed and listened for any sounds in the house. She eventually got up, turned on the light in her bedroom, and then turned on every light in the house to make sure no one was there. The victim also checked the doors and windows of the house. She noticed that the doors to the house were still locked, as they had been before she went to bed. The victim also noticed that the window in the living room was wide open, even though the screen had been down and in the locked position when she went to bed. The victim awakened her mother and called the police.

The police arrived, processed the scene for fingerprints, and found seven latent fingerprints on the windowsills of the window of entry and the victim's bedroom window. Fingerprint number seven, showing the right middle and right ring fingers of the defendant with the fingers pointing inward, was taken from the exterior of the bedroom windowsill, which was not the window of entry. A positive identification of the defendant was made from fingerprint number seven.[8] The defendant was arrested on July 8, 1986, in connection with this incident.

[7] The victim testified that her assailant took $180 from her bedroom. The defendant was acquitted of the robbery charges.

[8] This was the only fingerprint from which a positive identification could be made.

I

A

## Sufficiency of Evidence Regarding Identification

The defendant first claims that the evidence was insufficient to prove his identification as the perpetrator of the crimes charged, thereby invalidating all of the convictions. We conclude, however, that the evidence of identification was sufficient to convict the defendant of all crimes charged.

"In reviewing claims of insufficiency, we first examine the evidence presented at trial and construe it in the light most favorable to sustaining the verdict. . . . We then look at the facts established at trial and the reasonable inferences drawn therefrom, and decide whether the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." (Citation omitted.) *State* v. *Oliver*, 41 Conn. App. 139, 142, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). "The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We give deference to the unique opportunity of the trier of fact to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility." *State* v. *Miranda*, 41 Conn. App. 333, 337–38, 675 A.2d 925 (1996).

According to the defendant, his identification as the perpetrator of the crimes rested solely on fingerprint evidence. The defendant argues that without the fingerprint evidence his convictions would have been impossible and even with it, the convictions must be reversed

because the state was unable to prove that the fingerprint impressions were made at the time of the crime. The defendant relies on *State* v. *Payne*, 186 Conn. 179, 182, 440 A.2d 280 (1982), and *State* v. *Mayell*, 163 Conn. 419, 426, 311 A.2d 60 (1972), in support of his position. Those cases state that "a conviction may not stand on fingerprint evidence alone unless the prints were found under such circumstances that they could only have been impressed at the time the crime was perpetrated." *State* v. *Iovieno*, 14 Conn. App. 710, 719, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988), quoting *State* v. *Payne*, supra, 182.

The defendant argues that, as in *State* v. *Payne*, supra, 186 Conn. 183, "[t]he state was unable to present any evidence dating the defendant's fingerprints or otherwise limiting their impression to the circumstances of the crime." In fact, in the present case, the state's own witness regarding the fingerprints testified that there are instances in which latent fingerprints have been recovered from objects years after they had been left. The defendant further argues that the exterior windowsill was generally accessible to the defendant and that he might have touched the windowsill prior to the night in question.

The state argues in response that *State* v. *Payne*, supra, 186 Conn. 179, and *State* v. *Mayell*, supra, 163 Conn. 419, do not apply to the present case because the identification evidence was not limited to the fingerprint evidence. Specifically, a DNA examination conducted subsequent to the night in question established that the defendant could not be excluded as a potential donor, and that he was within the 15 percent of the black population that could have been the source of the DNA. Furthermore, although the victim acknowledged that she never saw her assailant's face because it was dark and he was wearing what appeared to be a woman's stocking over his face, she testified as to the general

physical characteristics of the defendant, which in fact match those of the defendant.[9] The state also argues that the windowsill where the fingerprints were found was not in an area accessible to the public because it was "five to six feet off the ground, was five or six feet from the sidewalk and could not be touched by a pedestrian; the yard upon which the window faced was surrounded by a hedge about two and one-half feet tall and there were additional plants between the hedge and the house."

Construing the evidence in the light most favorable to sustaining the verdict, we agree with the state that the evidence of identification was sufficient to convict the defendant of the crimes charged. The jury could have reasonably concluded, on the basis of all of the evidence, including the DNA evidence and the general description of the defendant, as well as the fingerprint evidence, that the defendant looked in through the victim's bedroom window, leaving the fingerprint impression, entered the house through the living room window, and thereafter committed the assault on the victim.

B

Sufficiency of Evidence Regarding Unlawful Restraint

Alternatively, the defendant claims that the evidence was insufficient to support the unlawful restraint conviction. Specifically, the defendant argues that pursuant to General Statutes (Rev. to 1985) § 53a-95, the state must prove that he "restrained another person under

---

[9] The victim testified that her assailant was between five feet eight and five feet nine inches tall and appeared to be black with a slight to medium build. She also believed him to be in his early to mid-twenties. At one point during the assault, the assailant pulled up the stocking mask to near his nose. The victim was questioned by the police after the incident and indicated that she could not recall whether he had any facial hair, and she testified at trial that she could not recall whether he had any facial hair.

circumstances which expose the latter to a substantial risk of physical injury." The defendant claims that there was insufficient evidence of a "substantial risk." We disagree.

"Where the evidence demonstrates that had the victim struggled and resisted, she might have been seriously injured, the trier of fact could find that the defendant restrained the victim under circumstances that posed a substantial risk of physical injury." *State v. Coleman*, 41 Conn. App. 255, 280, 675 A.2d 887 (1996). In the present case, the evidence reveals that the defendant awakened the victim by putting his hand over her mouth, forcibly pulled the victim to the edge of the bed, causing her to fear physical injury, and engaged in sexual intercourse with her. He then threw a blanket over the victim and told her not to move, which also caused her to fear for her physical safety. Our review of the record reveals that the jury had sufficient evidence to conclude reasonably that the defendant exposed the victim to a substantial risk of physical injury.

II

The defendant next argues that the trial court improperly admitted into evidence four knives that were not connected to the crimes. Three of these knives were found in the defendant's vehicle following his arrest and one of the knives was found on the defendant's person at the time of his arrest.

Regarding the three knives found in the defendant's vehicle, the transcript reveals the following. Outside the presence of the jury, the state argued that after the defendant was arrested while seated in his vehicle in the early morning hours of July 8, 1986, a search warrant was obtained for the contents of the vehicle, and the vehicle was towed to the police station. Detective James Stephenson, who conducted the search of the vehicle,

recovered certain items from the vehicle that the state sought to introduce into evidence. Specifically, the state noted its intention to introduce into evidence a pocket knife, a sheetrock knife and a survival knife. The state noted in its argument that entry to the victim's apartment had been gained through a screen that had been cut by a sharp instrument. Counsel for the defendant objected on the grounds that the admission of the knives was highly inflammatory and that they were in no way connected to the present case. The trial court overruled the defendant's objection.[10]

Stephenson testified before the jury that on July 8, 1986, he assisted in conducting the inventory of the items taken from the defendant's vehicle. Over the defendant's objection, the three knives, exhibits L1, L2 and L3, were then admitted into evidence. Stephenson explained to the jury where these items were found in the vehicle.[11] On cross-examination, Stephenson testified that a screwdriver was also taken from the car. He also testified that he did not know how long these knives had been in the vehicle and he did not know if any of the knives were ever processed for fingerprints.

Regarding the knife found on the defendant's person, the transcript reveals the following. Outside the presence of the jury, the defendant objected to the admis-

---

[10] The trial court noted: "That screen was cut, as I recall the testimony, presumably in order to unlock the storm window, presumably there and to get into the room. It wouldn't strike me that there is a lot of relevance to it, and the objection should be more to the weight than to the admissibility, and the jury can do with it what they want, and counsel too, of course, is always free to argue the weight of that evidence, and in connection with the offenses."

[11] Stephenson testified as follows: "L3 is what I would describe as a blue handle sheetrock type of knife, taken from the glove compartment of the vehicle. L1 is what I would describe a survival type of knife, which was taken from the carpet area, next to the driver side of the vehicle inside the carpet itself, and L2 is a pocket style type of knife, which I recall came from the trunk of the vehicle."

sion of a knife seized from him at the time of his arrest. Although the state could not say that this was the knife used in the incident, it argued that the knife was relevant because there had been evidence that the screen to the victim's house had been cut with a sharp instrument, and that this knife was found in the defendant's possession twenty-two hours after the crime. The trial court overruled the defendant's objection and admitted the knife into evidence.[12] The state and the defendant then stipulated before the jury that Detective Ray Della Camera was unavailable to testify, but that if he were available, he would testify, inter alia, that (1) he arrested the defendant on July 8, 1986, while the defendant was seated in his vehicle; (2) upon his arrest, the defendant did not attempt to flee; and (3) at the time of the defendant's arrest, "the defendant was searched and found to be in possession of a hook-bill knife with a curved blade and wooden handle."

With regard to the admission of these four knives, the defendant argues that we are bound by our previous decision in *State* v. *Coleman*, 35 Conn. App. 279, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994) (*Coleman 1994*), in which we held that the trial court had improperly permitted testimony regarding the same three knives that had been seized from the defendant's vehicle in the July 8, 1986 inventory search of the defendant's vehicle.[13] The state argues in

---

[12] The trial court stated: "This appears to be the same category as the other three knives that were taken either from the vehicle in which the defendant was operating, and the earlier knife, as a result of the search warrant or arrest warrant, and this knife apparently, according to the transcript, was on the person of the defendant at the time that he was arrested. So, it belongs in the same case."

[13] Although *Coleman 1994* involved only the knives seized from the defendant's vehicle, we conclude that it applies to the knife seized from the defendant's person as well, because the defendant's objections and the court's rulings were the same each time. This discussion therefore encompasses both of the trial court's rulings, regarding the admission of all four knives.

response that the knives were relevant and that it is within the trial court's broad discretion to determine the relevancy of evidence. The state also attempts to distinguish *Coleman 1994* and finally argues that even if the knives were improperly admitted, the error was harmless. We agree with the defendant.

In *Coleman 1994*, the victim was awakened on June 23, 1986, "by the touch of a knife on her throat and a hand placed over her mouth. The victim struggled with her assailant and tried to grab the knife from him. During the struggle, the victim sustained several lacerations on her right hand and was struck in the face several times." *State* v. *Coleman*, supra, 35 Conn. App. 281. The victim in *Coleman 1994* was eventually able to escape from her assailant. The police obtained a partial latent palm print from the victim's bathtub that matched the defendant's palm print.

As in the present case, in *Coleman 1994* "the state offered the testimony of Detective James Stephenson of the New Haven police department, a participant in the inventory search of the defendant's car on July 8, 1986. The defendant objected on the ground that there was no evidence connecting the knives found in his car to the crimes charged against him and that these knives were irrelevant and highly prejudicial. The objection was overruled on the ground that the knives were relevant to show the 'accused possessed an article with which the particular crime charged may have been accomplished,' and that 'the accused had the means to commit the crime.' " *State* v. *Coleman*, supra, 35 Conn. App. 285. Stephenson then testified about the three knives found in the defendant's vehicle. Unlike the present case, however, the state chose not to offer the knives into evidence in *Coleman 1994*.

We concluded in *Coleman 1994* that the trial court abused its discretion in admitting Stephenson's testi-

mony concerning the three knives. In so holding, we stated that "[i]t is error to allow into evidence testimony concerning articles seized from the defendant that tend to indicate criminal propensity when those articles are not connected to the commission of the crime charged. *State* v. *Ferraro*, 160 Conn. 42, 45, 273 A.2d 694 (1970); *State* v. *Johnson*, 160 Conn. 28, 31, 273 A.2d 702 (1970)." *State* v. *Coleman*, supra, 35 Conn. App. 287. Concerning the knives, we stated that "[t]here is nothing in the record to suggest that the knives found in the defendant's car had any connection to the crimes committed against the victim. Although the victim testified that she was awakened in her apartment by an assailant who was holding a knife against her throat and that during a struggle with him her right hand was slashed by the blade of the knife, the state never connected the fact of the defendant's possession of three knives with the commission of the crimes for which he stood charged. The knives were discovered in the defendant's car more than two weeks after the victim was assaulted, the victim never described the knife used by her assailant, and the state never argued that one of the defendant's knives was used in the assault against the victim." Id., 285–86.

Although we concluded in *Coleman 1994* that the trial court improperly admitted the testimony concerning the three knives, we further held that the error was harmless. In so holding, we relied on the fact that Stephenson's testimony was limited to a brief description of the knives and the fact that the jury never saw the actual knives as the state chose not to put them into evidence. *State* v. *Coleman*, supra, 35 Conn. App. 288–89. We also noted that the only reasonable inference from the state's evidence in the case, including the latent palm print that was discovered in the victim's bathtub, was that "the defendant entered [the victim's] apartment through the window and inadvertently left

his palm print in the bathtub during the commission of the crimes charged." Id., 289. In light of the evidence, we concluded that "we cannot say that the improper testimony briefly describing the three knives more probably than not affected the result." Id., 289.

In the present case, the connection between the defendant's possession of the knives and the crimes committed is more attenuated than in *Coleman 1994*. Unlike *Coleman 1994*, where the victim was threatened by a knife and sustained lacerations from a knife during with her struggle with the defendant, the victim in the present case never testified that the defendant displayed or threatened her with a knife. Whereas in *Coleman 1994*, Stephenson's testimony "was limited to a brief description of the knives"; *State* v. *Coleman*, supra, 35 Conn. App. 288; and the jury never saw the actual knives, in the present case, all four knives were admitted into evidence and were commented on by counsel in closing argument.[14]

Furthermore, the evidence against the defendant, as a whole, although strong enough to pass the sufficiency of evidence test; see part I; is not nearly as strong as in *Coleman 1994*. Although the victim in the present case testified as to the general physical characteristics of the defendant, she acknowledged that she never saw

---

[14] The prosecuting attorney argued that although he was "not saying that any one of those knives was used necessarily to gain entry into [the victim's] home, [it] certainly points to the fact that this defendant has the means for committing a burglary, and the means for cutting the screen, and entering into her home. . . . [T]his was almost twenty-four hours after the crime itself had occurred."

Defense counsel responded during closing argument that there was no photograph showing the cuts in the screen so the jurors were left to speculate that they had been made with a sharp object. Defense counsel further argued that no one had ever seen any of the objects used for any criminal act.

In rebuttal, the prosecuting attorney again argued that while he could not claim that any of the knives cut the screen, twenty-four hours later the defendant had the means to cut the screen.

her assailant's face because it was dark and he was wearing what appeared to be a woman's stocking over his face. Unlike *Coleman 1994*, where the defendant's palm print was found on the bathtub inside the house, here, the defendant's fingerprint was on the *exterior* of the victim's bedroom windowsill, which was not the window of entry. The DNA evidence that was presented showed that the defendant could have been within the 15 percent of the black population that could have been the source of the DNA. None of these factors, standing alone, would have been sufficient to convict the defendant, but, taken together, the evidence was sufficient to convict the defendant of the crimes charged.

Just as it was improper to admit the testimony concerning the knives in *Coleman 1994*, we conclude that it was improper to admit the knives themselves into evidence in the present case. "[I]t is reversible error for the trial court to allow into evidence articles seized from the defendant which tend to indicate criminal propensity when those articles are not connected to the commission of the crime charged." *State* v. *Wilson*, 199 Conn. 417, 449, 507 A.2d 1367 (1986); see also *State* v. *Mozell*, 36 Conn. App. 672, 677, 652 A.2d 1060 (1995). Although in *Coleman 1994*, the knives were found more than two weeks after the commission of the crime and in the present case the knives were found less than twenty-four hours after the commission of the crime, we conclude that the state has not established that the knives were sufficiently connected to the crimes charged. We further conclude that, unlike in *Coleman 1994*, the improper admission of the knives in this case is not harmless. In light of the evidence presented in this case, we believe that it is more probable than not that the erroneous action of the trial court in admitting the knives into evidence affected the result of the trial. See *State* v. *Coleman*, supra, 35 Conn. App. 288.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.