STATE OF CONNECTICUT *v.* EAKER MCCLENDON
(AC 18772)

Foti, Landau and Spallone, Js.

---

Argued December 13, 1999—officially released February 1, 2000

*Glenn W. Falk,* special public defender, with whom, on the brief, was *Laura G. Holland,* law student intern, for the appellant (defendant).

*Harry Weller,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Robert J. O'Brien,* assistant state's attorney, for the appellee (state).

*Opinion*

SPALLONE, J. The defendant, Eaker McClendon, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c[1] and robbery in the first degree in

---

[1] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in further-ance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground

violation of General Statutes §§ 53a-134 (a) (2)[2] and 53a-8.[3] The sole claim raised on appeal is that there was insufficient evidence to convict him of felony murder and first degree robbery. The defendant claims that the state failed to prove that he was an accomplice to the underlying robbery rather than someone who was merely present at the scene.

From the evidence adduced at trial and reasonable inferences to be drawn therefrom, the jury could have found the following facts. At approximately 9:30 p.m. on October 24, 1994, the defendant, Leotis Payne and Alexander Lacks arrived at the New Haven apartment of Steven Thomas and Henry Jones, ostensibly to speak with Jones, and remained there for approximately one-half hour. Thomas observed the men having a discussion, but could not hear what they were discussing because they were whispering.

Later that evening, Thomas again observed the defendant, Payne and Lacks at the corner of Frank and Eddy Streets, where they approached him and asked for a ride in his van. Subsequently, Jones gave the defendant, Payne and Lacks a ride in Thomas' van. After approximately fifteen minutes, they returned to the corner of Frank and Eddy Streets and parked.

At approximately the same time, Jose Anthony Marrero along with his girlfriend, Amy Cobain, and a friend,

---

to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

Devon MacFarlane, walked to the home of Louie Hood, a friend of Marrero, to see if Hood wanted to accompany them to a store. Upon arriving at Hood's home, Marrero, Cobain and MacFarlane noticed the defendant, Payne and Lacks standing next to the van parked at the corner of Frank and Eddy Streets. Marrero approached them and stated that he hoped they were not selling drugs. They assured him that they were not.

After talking to the three men, Marrero went upstairs to get Hood. Hood joined the group, and they proceeded to a nearby store to get change for a $100 bill. The defendant, Payne and Lacks, who were standing by the van, also started walking toward the store.

While Marrero was in the store getting change for the $100 bill, one of the three men entered, stood next to him and observed the transaction. Marrero was given five $20 bills for the $100. Marrero exited the store and, along with Hood, Cobain and MacFarlane, walked toward Hood's home. The defendant, Payne, and Lacks followed them. Suddenly, Payne approached Cobain and put a gun to her head. Lacks and the defendant, who were standing close behind Payne, seemingly acting as lookouts, repeatedly urged Payne to "hurry up." Payne demanded that Marrero, Cobain and Hood turn over their valuables. Hood pushed Cobain out of the way and told her to run. Marrero then stepped toward Payne, and Payne held the gun to his head, whereupon Marrero asked Payne not to shoot.

While the defendant and Lacks were encouraging Payne to hurry, Payne went through Marrero's pockets and took his money and some papers. After taking Marrero's money, the defendant and Lacks started to leave the scene. Payne backed away from the victims and then shot at Marrero. Hood managed to push Marrero out of the way, but was struck in the left shoulder by the bullet. Thereafter, the defendant, Payne and Lacks

ran off together. The bullet that struck Hood traveled downward, passed through his heart and lung, and came to rest in his liver. Hood died from the gunshot wound.

After investigating the homicide, on October 27, 1994, New Haven police officers arrived at 7B Station Court to execute arrest warrants for the defendant and Lacks. They surrounded the building when they arrived. After forcing open the door to the apartment, the police entered and found Lacks in a second floor bedroom, hiding behind a bed. The defendant jumped from a second floor window. When he landed, he was immediately confronted by a uniformed police officer who had been stationed there to prevent any attempted escapes. The defendant ran when he saw the officer, but he was caught after a brief chase.

The defendant's claim that there was insufficient evidence to support his conviction is unavailing. The two-pronged test for determining whether evidence is sufficient to support a conviction is well established. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993)." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); see *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996).

" 'The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State* v. *Coleman*, 42 Conn. App. 78, 82, 679 A.2d 950

(1996), rev'd on other grounds, 241 Conn. 784, 699 A.2d 91 (1997). "While the jury may not speculate to reach a conclusion of guilt, [it] may draw reasonable, logical inferences from the facts proven to reach a verdict." *State* v. *Williams*, 16 Conn. App. 75, 79, 546 A.2d 943 (1988). Deference is given to the trier of fact who had the opportunity to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility. *State* v. *Miranda*, 41 Conn. App. 333, 338, 675 A.2d 925 (1996), rev'd on other grounds, 245 Conn. 209, 715 A.2d 680 (1998). "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984).

In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. *State* v. *Sivri*, supra, 231 Conn. 132. "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." Id., 134; *State* v. *DeJesus*, supra, 236 Conn. 196; see *State* v. *Delgado*, 247 Conn. 616, 621, 725 A.2d 306 (1999).

"To justify a conviction as an accessory, the state must prove both that the defendant had the intent to aid the principal and that, in so aiding, he had the intent to commit the crime. . . . Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the [principal] must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and willingly assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." (Citations omitted; internal quotation marks omitted.)

*State* v. *Fudge*, 20 Conn. App. 665, 668, 569 A.2d 1145, cert. denied, 214 Conn. 807, 573 A.2d 321 (1990). It is, therefore, for the trier of fact to determine whether the defendant was innocently present at the scene of the crime or whether he joined in the robbery that led to Hood's death. See id.

The defendant's conduct in this case is remarkably similar to evidence that this court considered in *State* v. *Smith*, 15 Conn. App. 122, 123, 543 A.2d 301, cert. denied, 209 Conn. 805, 548 A.2d 441 (1988). There, the defendant accompanied the principal to the scene, cooperated with him and acted as a decoy. He then left the scene with the principal, only to return with the principal during the commission of the crime before attempting to flee the scene with him. Id., 123–24.

Here, the defendant spent the entire evening with Payne and Lacks. They were together when Marrero approached and asked if they were selling drugs. They were standing together by the parked van when the victims walked by on the way to the store. The defendant then accompanied Payne and Lacks as they followed the victims to the store. He waited outside while one of the men followed Marrero into the store. After the victims left the store, the defendant, along with Payne and Lacks, followed them. When Payne accosted the victims and put his gun to Cobain's head, the defendant did not lag behind but, rather, moved to a spot directly behind Payne and stood alongside Lacks.

Further, contrary to the defendant's claims, he did more than admonish Payne to "hurry up." Marrero testified that the defendant and Lacks acted as lookouts during the robbery. Such evidence supports a finding of accessory to a robbery. *State* v. *Gray*, 200 Conn. 523, 536–37, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). Also, the defendant and the others fled the scene together. Finally, the defendant attempted again to flee three days later when the police

attempted to serve him with an arrest warrant, thereby indicating a consciousness of guilt. See *State* v. *Gilbert*, 52 Conn. App. 531, 542, 727 A.2d 747, cert. denied, 249 Conn. 905, 733 A.2d 224 (1999) (unexplained flight supports finding of consciousness of guilt).

Our review of the record, transcripts and briefs clearly indicates that there was sufficient evidence to support the conviction.

The judgment is affirmed.

In this opinion the other judges concurred.