# STATE OF CONNECTICUT *v.* ADAM OSORIA
## (AC 24326)

Foti, McLachlan and Dupont, Js.

Argued October 15—officially released December 21, 2004

*David B. Rozwaski,* special public defender, for the appellant (defendant).

*Jessica Probolus,* special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Kevin Doyle,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Adam Osoria, appeals from the judgments of conviction, following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), and two counts of larceny in the third degree as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-124 (a) (1).[1] On appeal, the defendant claims that the evidence presented at trial did not support the convictions. We affirm the judgments of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. During the evening hours of January 8, 2002, the defendant, Jimmy Santos, Christin Lopez, Jose Ramos and another man identified at trial as "Jose" were gathered at a housing project in New Haven. The five men walked to East Haven for the purpose of stealing an automobile. The defendant was armed with a sawed-off shotgun. Upon reaching a condominium complex in East Haven, the men forcibly entered a Honda Accord, which the defendant drove away.

Jose later drove the vehicle to Orchard Street in New Haven where he pulled alongside Robert Long and Bruce Sherents, whom he and the other men had observed walking down the street carrying a marijuana cigar. The defendant and Ramos, donning masks and gloves, exited the car. The defendant and Ramos demanded whatever possessions Long and Sherents

[1] The state charged the defendant, under docket number CR02-000781, with robbery in the first degree, attempt to commit robbery in the first degree and larceny in the third degree as an accessory. The state charged the defendant, under docket number CR02-210187, with larceny in the third degree as an accessory. The court consolidated these cases prior to the start of trial. The court sentenced the defendant to a total effective term of incarceration of thirty-three years.

had on their persons. The defendant struck Long, and Ramos struck Sherents with the shotgun. Ramos took Sherents' pager and, during the altercation, Lopez exited the car and picked up the marijuana cigar, which had been dropped by either Long or Sherents, from the sidewalk.

The five men drove away, ultimately reaching the area of Dixwell Avenue in Hamden. Robert Brockett, an officer in the Hamden police department who was patrolling the area, observed the Honda travel through an intersection at a very high rate of speed. Brockett pursued the automobile, which reached speeds in excess of 100 miles per hour. The Honda ultimately crashed on a residential property. The defendant and the four other occupants ran from the automobile to avoid capture. The defendant, Ramos, Santos and Jose ran to a nearby condominium complex and hid until they no longer detected police activity. Lopez ran in a different direction. The four men then observed a Nissan Altima parked nearby. The Nissan's owner left the automobile running while he was a short distance away from the automobile, delivering newspapers. The defendant and the other three men got into the Nissan and, with the defendant driving, left the scene.

The defendant drove to New Haven and, at some point thereafter, police officers from New Haven and Hamden, as well as Connecticut state troopers, pursued the defendant in a high speed chase through New Haven, West Haven and Milford. After taking Ramos to his home, the defendant ultimately drove to a public housing project in New Haven, where he, Santos and Jose ran from the stolen automobile to avoid capture. A police officer arrested the defendant several days later. Additional facts will be set forth as necessary.

Before addressing the defendant's sufficiency claims, we first set forth our standard of review.[2] "In reviewing

---

[2] The record reflects that at the close of the state's case-in-chief the defendant moved for a judgment of acquittal. The court denied the motion.

a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Holmes*, 75 Conn. App. 721, 739–40, 817 A.2d 689, cert. denied, 264 Conn. 903, 823 A.2d 1222 (2003). We next set forth the elements that are integral to the crimes of which the defendant stands convicted and determine whether the state met its burden of proving each element beyond a reasonable doubt.

I

The state bore the burden of proving the following elements to warrant a conviction for robbery in the first degree in violation of § 53a-134 (a) (4): (1) that the defendant or another participant in the crime was in the course of committing the crime of robbery or of immediate flight therefrom and (2) that the defendant or another participant in the crime displayed or threatened the use of what he represented by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming

resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133. "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119. The state alleged that Sherents was the victim of the crime committed by the defendant and his accomplices.

At trial, Long testified that, while he was walking along Orchard Street with Sherents, he noticed a green, four door Honda stop alongside them. Long recalled that two men wearing sweatshirts with hoods attached to them, face masks and gloves exited the automobile.[3] Long testified that one of the men was holding a sawed-off shotgun that was aimed at Long's chest. Long testified that he and Sherents pleaded with the men not to kill them and that the man holding the shotgun told him to "run everything you got," meaning he should empty his pockets. Long testified that the other man, who was unarmed and had his hands in his pockets, demanded the same. Long testified that the unarmed man then struck him in the jaw with his fist, causing him to fall to the ground. The unarmed man then searched Long's pockets. Long further testified that he observed the armed man strike Sherents in the face with his shotgun. He also testified that the unarmed man told the armed man, "Lets get out of here. Don't do it. Don't shoot him." Finally, Long testified that the two perpetrators then got back into their car and drove away.

[3] Long and Sherents testified that this clothing concealed the identity of the perpetrators. Despite this fact, Long and Sherents described the height of the unarmed perpetrator.

Sherents' testimony corroborated Long's account of what occurred on Orchard Street. Sherents recalled how two men exited the automobile, one of them brandishing a shotgun. Sherents testified that the unarmed man approached Long and struck Long in the face. The other man approached him and demanded that he hand over everything he had in his pockets. Sherents testified that he gave him his pager. Sherents recalled that after he handed over his pager, the man armed with the shotgun struck him in the face with the barrel of the shotgun and kicked him once he fell to the ground. Sherents further recalled that the unarmed man stood by while the armed man inflicted injury to him, ultimately telling the armed man to "let him go."

Santos testified at trial as a witness for the state. Santos recalled that he, the defendant, Ramos, Lopez and Jose walked to East Haven from New Haven intent on stealing a car. Santos testified that the defendant concealed a sawed-off shotgun in his jacket. He recalled that he and the others arrived at a condominium complex in East Haven and forcibly entered a green Honda. They all got into the car, which the defendant drove away. Santos testified that they eventually drove to Orchard Street and that he and the others noticed two men walking down the sidewalk while "rolling up a blunt."[4] Santos testified that everyone in the automobile agreed that they should take this blunt away from the two men and that Jose, who was driving at this point, drove alongside the two men and stopped the car. Santos testified that Ramos then exited the car along with the defendant and that he stayed in the car, keeping a lookout for the police. Santos recalled hearing Ramos strike one of the men with the shotgun and that he observed the defendant checking the pockets of the other man. He further testified that, at some point, Lopez exited the automobile to pick up the blunt that

---

[4] Santos testified that a "blunt" is a cigar filled with marijuana.

fell to the sidewalk. Santos testified that, after the defendant, Ramos and Lopez got back into the automobile, Ramos handed him a pager.[5] Santos recalled that, soon after they drove away from the scene, their automobile was pursued by police and that Jose, who was driving, engaged the police in a high speed pursuit from New Haven to Hamden.

In his principal brief, the defendant points out that the victims did not identify the defendant as a perpetrator and argues that Santos provided the only evidence that linked him to any of the crimes. The defendant largely bases his sufficiency claim on his assertion that "Santos' testimony should not have been believed" by the jury because Santos testified as part of a plea bargain with the state, because Santos admitted that he gave false statements to the police immediately following his arrest, because Santos' testimony in court differed from the statements that he gave to the police after his arrest and because Santos testified that he and Lopez were close friends.

The defendant's challenge to the sufficiency of the evidence is primarily a challenge to the credibility of Santos' testimony, which provided a sufficient evidentiary basis for the conviction. The defendant argues that "there is more than enough reason to doubt the credibility of Mr. Santos . . . ." Our task is to view the evidence in the light most favorable to sustaining the verdict before determining if the jury reasonably could have concluded that such evidence established guilt beyond a reasonable doubt. *State* v. *Holmes*, supra, 75 Conn. App. 739. We assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe

[5] Santos testified that the police confiscated the pager from him after his arrest later that night. The state introduced the pager into evidence as state's exhibit three.

or to disbelieve a competent witness are beyond our review. "As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Hathaway*, 78 Conn. App. 527, 531, 827 A.2d 780, cert. denied, 266 Conn. 909, 832 A.2d 73 (2003). The arguments raised by the defendant on appeal with regard to Santos' credibility are arguments that the defendant properly raised at trial before the jury; they were fodder for the jury's consideration in determining what weight to afford Santos' credibility, but are not the proper subject of an appeal.

The defendant also argues that the evidence was insufficient because there was no evidence that he used the shotgun during the robbery. This argument fails because such evidence is not required by § 53a-134 (a) (4), which provides in relevant part that a person is guilty of robbery in the first degree when, in the course of the commission of a robbery, "he *or another participant in the crime* . . . displays or threatens the use of what he represents by his words or conduct to be a . . . shotgun . . . ." (Emphasis added.) The evidence clearly demonstrated that Santos displayed a shotgun during the robbery and that the defendant and Santos were active participants in the crime.

The defendant further argues that the evidence did not support the conviction because "it is clear that . . . the motive of the parties was initially to take the marijuana cigarette" that Long and Sherents had been holding and "[c]learly the value of one marijuana cigarette does not rise to the level of the statutory definition." The defendant does not cite to any authority in support

of this claim and we are unable to find any. There is no statutory monetary value of stolen property included as an element of robbery in the first degree. The defendant's claim therefore fails.

Finally, the defendant argues that the evidence did not support his conviction because Long testified that, when he observed the man striking Sherents with the shotgun, the unarmed man, who the state alleged was the defendant, stated, "Let's get out of here. Don't do it. Don't shoot him." The defendant posits that "such a statement demonstrates a renunciation by [him] of further harm and/or violence." As a preliminary matter, the defense of renunciation was not before the jury because the defendant did not assert the defense at trial, nor did he request that the court instruct the jury as to the defense. Further, the defense is inapplicable here, where this evidence in no way detracts from the evidence demonstrating that the defendant committed the crime of robbery in the first degree. The fact that the evidence suggested that the defendant asked his accomplice not to shoot one of the victims in no way supports a finding that the defendant not only "completely and voluntarily renounced his participation in the crime, but also that he did so in such a way as wholly to deprive or neutralize his participation of its effectiveness." (Internal quotation marks omitted.) *State* v. *Richardson*, 40 Conn. App. 526, 531, 671 A.2d 840, cert. denied, 237 Conn. 905, 674 A.2d 1333, 237 Conn. 910, 675 A.2d 457, cert. denied, 519 U.S. 902, 117 S. Ct. 257, 136 L. Ed. 2d 183 (1996).

II

To warrant a conviction for attempt to commit robbery in the first degree in violation of §§ 53a-49 (a) (2) and 53a-134 (a) (4), the state bore the burden of proving beyond a reasonable doubt that the defendant, acting with the kind of mental state required for the commis-

sion of the crime of robbery in the first degree, intentionally did or omitted to do something which, under the circumstances as he believed them to be, was an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime of robbery in the first degree. General Statutes § 53a-49 (a) (2). Here, the state alleged that the defendant committed this crime against Long.

We fully discussed the testimony of Long, Sherents and Santos in part I. That evidence supports a finding that the defendant, acting in concert with Ramos, possessed the mental state to commit the crime of robbery in the first degree and that he intentionally acted in such a way so as to culminate the crime against Long. The defendant's sufficiency challenge with regard to his conviction of this crime is based on his claim that Santos' testimony was not credible. We rejected that claim in part I and need not readdress it here.

### III

The defendant was convicted of larceny in the third degree as an accessory in violation of § 53a-8 (a) and 53a-124 (a) (1) in connection with the theft of the Honda in East Haven. "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less . . . ." General Statutes § 53a-124 (a) (1). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119. "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct

and may be prosecuted and punished as if he were the principal offender." General Statutes § 53a-8 (a).

The evidence presented supported the conviction. Santos testified that he, the defendant and three other men walked from New Haven to East Haven during the evening hours of January 8, 2002, to steal an automobile. Specifically, Santos testified that they were looking for a Honda. Santos recalled that he and the others walked into the front of a condominium complex. Santos was carrying the shotgun. Santos testified that, using a screwdriver, he and the others gained entry to a light green Honda and started the automobile with the screwdriver. Santos further testified that the defendant drove the automobile from where it was parked at the condominium complex to a McDonald's restaurant in New Haven.[6]

In his principal brief, the defendant argues: "[T]here was no evidence linking the defendant to the theft of the car, other than Mr. Santos' testimony. Other than the fact that Mr. Santos testified that the defendant drove the car in the very beginning, there was [no] testimony that the defendant had broken into the car or started the car. Thereafter, it was clear from Mr. Santos' testimony that the defendant was only a passenger in the car." The defendant also claims that the evidence was insufficient because the state did not present any evidence that police investigators found fingerprints in the automobile.

First, we note that the state was not required to prove the essential elements of this crime with evidence other

[6] Barbara Dedrum testified that she owned the Honda taken by the defendant and the others, that she had left the car locked on the evening of January 8, 2002, and that she did not know the defendant or any of the individuals who were accused of participating in the larceny nor did she give any of them permission to take her automobile. Dedrum also testified that following the events of January 8, 2002, during which, as she described, her car was "totaled," her automobile insurance carrier paid her $3500, which represented the fair market value of her car.

than Santos' testimony. Such testimony provided a sufficient evidentiary basis to prove that the defendant committed the crime. Second, the defendant incorrectly argues that the state was required to prove that the defendant himself broke into the car or started the car. The state's burden was to present evidence that the defendant solicited, requested, commanded, importuned or intentionally aided another person to engage in conduct constituting larceny in the third degree. Here, the evidence amply supports a finding that the defendant intentionally aided Santos and three other men in the commission of a larceny. Third, the defendant argues that he did not commit a crime because, after he drove the stolen automobile away from the residence of its owner, the evidence suggests that later that night he was "only a passenger" in the stolen automobile. This aspect of the defendant's claim is wholly without merit. Finally, we note that the state was not required to present fingerprint evidence to prove its case.

## IV

The defendant was convicted of larceny in the third degree as an accessory in violation of §§ 53a-8 (a) and 53a-124 (a) (1) in connection with the theft of the Nissan in Hamden. We have already set forth the elements of this crime in part III. The state's burden was to present evidence that the defendant solicited, requested, commanded, importuned or intentionally aided another person to engage in conduct constituting larceny in the third degree.

We conclude that the following evidence amply supports the conviction. Santos testified that, after he, the defendant and the other three men left the scene of the altercation with Long and Sherents, they drove along New Haven streets in the Honda. Soon thereafter, Santos testified, he and his acquaintances noticed a police

cruiser behind their automobile. Santos recalled that Jose, who was then driving the Honda, led the police on a high speed chase into Hamden, where he crashed the car in a residential neighborhood. Santos testified that the five occupants of the Honda ran in different directions and that he and the defendant, along with two of their accomplices, hid from the police on the balcony of a nearby condominium. Santos testified that he and the three men left the balcony when they no longer heard police activity in the area and noticed a Nissan with exhaust coming from its muffler. They also noticed the Nissan's apparent owner away from the car delivering newspapers. Santos testified that the defendant got into the driver's seat of the automobile and he got into the passenger's seat, and that the defendant put the automobile into gear and drove away. Two of their accomplices got into the automobile shortly thereafter. Santos further testified that the automobile's owner chased after them telling them to stop, but that the defendant did not stop. Santos testified that the defendant drove from Hamden to New Haven, where he and the others "dumped the newspapers" that were still in the stolen automobile and removed the automobile's hubcap covers. The defendant then drove Ramos to his residence and continued to drive the car around New Haven. Santos testified that somewhere in the downtown area of New Haven police began to pursue them and that the defendant, who was still driving, led police on a high speed pursuit through New Haven, West Haven and Milford. The chase ultimately ended back in New Haven, where the defendant stopped the automobile at a housing project, and he, Santos and Jose ran from the police who were pursuing them.

Donald Hovick testified that he owned the Nissan taken by the defendant. Hovick testified that he customarily left his automobile unlocked and running as he made frequent stops to deliver newspapers along his

delivery route in Hamden. He recalled that during the early morning hours of January 9, 2002, he stepped away from his automobile to deliver newspapers, slipped on ice and then looked up to observe someone driving away in his automobile. He yelled for the driver to stop, but the driver sped away from him. Hovick also testified that the approximate fair market value of the automobile was between $3000 and $4000.

In his principal brief, the defendant sets forth his sufficiency claim as follows: "[T]he car was already running with the keys in it and there was no further testimony as to its exact value other than the testimony of Mr. Hovick. Mr. Hovick gave an estimated value of the car of $3000 to $4000. However, considering the age of the car (almost nine years) and its daily usage, the value was probably considerably less than the estimate given by Mr. Hovick. And again, there is the continuing problem of the self-serving testimony of Mr. Santos to implicate the defendant." The defendant also argues that the evidence was insufficient because the state did not present any fingerprint evidence connecting him with the theft of the automobile.

First, the fact that the Nissan was running and that its keys were in the ignition in no way detracts from the defendant's criminal liability in a scheme to deprive another of his motor vehicle wrongfully. Second, Hovick's testimony with regard to the value of his car was sufficient to satisfy the essential element of § 53a-124 (a) (1) that the value of the motor vehicle be $5000 or less. Hovick's estimation of the Nissan's worth satisfied the statutory requirement with regard to the automobile's worth, and Hovick was competent to testify as to the value of his own property. See *State* v. *Browne*, 84 Conn. App. 351, 387, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). Third, the state properly relied on Santos' testimony to prove the elements of this crime. Finally, we reject the defendant's claim that

the state bore the burden of demonstrating that he committed this crime by presenting fingerprint evidence. Fingerprint evidence is not an essential element of the crime.

The judgments are affirmed.

In this opinion the other judges concurred.