## STATE OF CONNECTICUT *v.* JORDI KERR
### (AC 26818)

Flynn, C. J., and Harper and McDonald, Js.

Argued September 25, 2007—officially released May 6, 2008

*Laljeebhai R. Patel*, special public defender, with whom, on the brief, was *Jane E. Carroll*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Jordi Kerr, appeals from the judgments of conviction, rendered after a jury

trial, of three counts of robbery in the first degree as an accessory in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8 (a), and two counts of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a). The defendant was charged in two separate, long form informations. One charged the defendant in two counts relating to a robbery that occurred at a Kentucky Fried Chicken fast food restaurant (KFC) in West Hartford on or about September 15, 2003. The other charged the defendant in three counts relating to robberies that occurred at a CVS pharmacy (CVS) in Hartford on or about October 1, 2003. On the state's motion, the court consolidated the defendant's cases with the cases against Jamal Bazemore and Ronnie Smith for both robberies. Subsequently, the cases were tried to the jury, and the defendant was found guilty on all charges on April 5, 2005. On appeal, the defendant claims that (1) the state produced insufficient evidence for the jury to find him guilty of all charges and that the trial court thus was obligated to render judgments of acquittal, and (2) the court improperly instructed the jury on conspiratorial liability. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On September 15, 2003, the defendant and three other men, Smith, Bazemore and Negus Jones were in a black 1998 Nissan Maxima that was stolen by Bazemore on September 14, 2003, to use in a robbery and later to abandon. The four men decided to commit a robbery at a KFC on New Britain Avenue in West Hartford. Upon arriving at the KFC during business hours, shortly after 11 p.m., the men agreed that Bazemore, the driver, would remain in the car while Smith, Jones and the defendant would enter the restaurant. The three

men, who were wearing hooded sweatshirts, face coverings and gloves, entered the restaurant carrying handguns. Smith wore a white "Jason mask."[1] There were no customers in the KFC at the time. After the men entered the restaurant, Smith approached the assistant manager, Vivette Wright-Wilson, who had seen their black car approach near the doorway, and ordered her to empty her pockets at gunpoint. From her pockets, Wright-Wilson gave Smith her money, $22. Jones approached another assistant manager, Mark Hamilton, and, at gunpoint, compelled him to open the cash register. After Hamilton opened the register, Jones removed all of the money. As Smith and Jones collected money, the defendant kept lookout over everyone in the KFC and made sure that no one left the premises. Smith subsequently approached Hamilton and threatened to shoot him if he did not open a second cash register. After Hamilton agreed to open the second register, Smith took the money and immediately exited the restaurant with Jones and the defendant. After the robbery, Hamilton pushed a panic button to contact the West Hartford police.

Upon leaving the store, the three men got back into the stolen Maxima, which turned left onto New Britain Avenue and then took an immediate right turn onto Hollywood Avenue. At that time, Carol Kinnane was walking down Stanwood Avenue, and she observed a black Nissan Maxima without lights driving down Hollywood Avenue. After the car stopped on a side street out of Kinnane's sight, Kinnane heard doors closing and heard several people running toward her. Kinnane then saw four men, one of whom was wearing a white mask, run around the corner of Stanwood Avenue. The man in the white mask said it was a "rush," and all four got into Smith's car, a gray and red Mercury Sable, and

---

[1] A "Jason mask" is a white hockey mask similar to that worn by the character Jason in the "Friday the Thirteenth" horror movie series.

drove away. The four men previously had parked the car on Stanwood Avenue earlier that night for use after the robbery. After the men drove away, Kinnane walked to the Maxima, which still had the motor running, to determine if anyone injured was in the car. Then, at Kinnane's request, a neighbor called the police, who immediately responded.

The four men took Smith's car to Bazemore's house on Cornwall Street in Hartford, where they changed their clothing and equally divided the money from the robbery. Bazemore remained at his house while Smith, Jones and the defendant left in Smith's car. Approximately two hours after the KFC robbery, Paul Cicero, a Hartford police officer, observed a gray and red Mercury Sable speeding southbound on Maple Avenue. Cicero, who was aware that a similar vehicle had been used in the KFC robbery earlier that night, stopped the car after a brief chase. Before Cicero could exit his cruiser, however, Jones, the driver of the car, fled through a backyard, at which point Smith, who was in the backseat, got into the driver's seat. With his gun drawn, Cicero stopped Smith and the defendant but was unable to stop Jones. Thereafter, Smith and the defendant were detained until a West Hartford police officer arrived at the scene with KFC employees Hamilton and Rudolf Gordon. Because witnesses from the KFC could not positively identify either Smith or the defendant as the masked men that participated in the robbery, the two men were not arrested that night. Kinnane, however, identified Smith's car as the car that she had seen earlier that night on Stanwood Avenue. The police then impounded Smith's car.

Approximately two weeks later, on October 1, 2003, a 1996 dark green Nissan Maxima was stolen by Bazemore on Cornwall Street in Hartford to commit another robbery. That night, the defendant, Smith, Bazemore and Jones drove in that car to a CVS on Blue Hills

Avenue in Hartford, where they all had agreed to commit an armed robbery. After arriving at the store, the defendant, whose gun had been lost, remained in the car with Bazemore while Smith and Jones entered the CVS armed with pistols at about 8 p.m. during business hours. Once inside the store, Smith and Jones covered their faces with T-shirts. Jones immediately went to the cash register where he encountered the store clerk, Nichole Smalls, who was Smith's sister. At gunpoint, Jones demanded money from the registers. While Jones collected the money from Smalls' register, Smith stopped three customers at gunpoint: Chayra Rodriguez; her sister, Jasmine Rodriguez; and Jasmine Rodriguez' eighteen month old son, Brian Harara. Smith ordered the women to give him all of their money. Jasmine Rodriguez and Chayra Rodriguez then gave Smith their money after Smith threatened to shoot Harara as he held a gun to the child's head. After taking the money, Smith and Jones left the store and got back into the Maxima to join the defendant and Bazemore. With Bazemore driving, they left the scene. The four men later abandoned the Maxima and went to Bazemore's nearby residence to divide the proceeds equally and to change clothing.

Both robberies were successfully recorded by store surveillance cameras.

After the completion of the presentation of evidence by the state, the defendant moved for judgments of acquittal on all charges. The court denied the motions. After the jury found the defendant guilty of all charges, the court sentenced the defendant to twenty years imprisonment, execution suspended after fourteen years, and four years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the evidence was insufficient as a matter of law to support his convictions of

robbery in the first degree as an accessory and conspiracy to commit robbery in the first degree. The defendant also argues that the evidence adduced at trial was insufficient to establish that he knowingly and wilfully joined in the CVS robbery with Jones, Smith and Bazemore, that he was a member of the conspiracy to rob the CVS and that he committed any of the charged crimes. We disagree.

First, we conclude that these claims are reviewable on appeal. "It is an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." (Internal quotation marks omitted.) *State* v. *Roy*, 233 Conn. 211, 212–13, 658 A.2d 566 (1995).

The following additional facts are relevant to our review of the defendant's claims. At trial, there was testimony that money was taken, at gunpoint, from cash registers at the KFC and the CVS robbery scenes. Moreover, in the KFC robbery, money was taken at gunpoint from an employee, and, in the CVS robbery, money was taken at gunpoint from two of the patrons. At trial, Jones was called as a witness by the state and testified that, on or about September 15 and October 1, 2003, he, Smith, Bazemore and the defendant needed money and that all agreed to use the stolen Maximas to commit a robbery at the KFC and, later, at the CVS. Jones testified that after arriving at the KFC in the stolen Maxima driven by Bazemore on September 15, Smith concealed his face with a "Jason mask" and entered the store with a nine millimeter automatic weapon. Jones, whose face was covered and who also had a pistol, testified that he went to the cash register, demanded money from the register while pointing a gun at an employee and emptied the register. Smith

first took money from Wright-Wilson at gunpoint and then pointed his gun at another employee and took money from an opened second register. The defendant, who also had his face concealed, entered the establishment with a pistol to act as a lookout and to ensure that no one left the restaurant during the robbery. Thereafter, the three men left in the stolen Maxima parked at the entrance to the restaurant.

Jones testified that, during the CVS robbery on October 1, 2003, only he and Smith entered the CVS because the defendant, who remained with Bazemore in the stolen Maxima, no longer had a gun. Jones testified that he went straight to the cash registers, carrying a pistol, and took cash after demanding that one of the registers be opened.

While testifying, Jones referred to the KFC and the CVS security videotapes. There was additional evidence that, while in the CVS, Smith took money at gunpoint from customers. Jones also testified that after both robberies, the four men went to Bazemore's house to divide the proceeds of the robbery and to change clothing.

"The standard of review we apply to a claim of insufficient evidence is well established. . . . [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Calabrese*, 279 Conn. 393, 402, 902 A.2d 1044 (2006). "In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore,

we must afford those determinations great deference." (Internal quotation marks omitted.) *State* v. *Leggett*, 94 Conn. App. 392, 398, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006).

## A

The defendant first claims that there was insufficient evidence to convict him of robbery in the first degree as an accessory in violation of §§ 53a-134 (a) (4)[2] and 53a-8 (a)[3] in connection with the CVS robbery. The defendant argues that the state failed to prove that he participated in the robbery at the CVS. The state argues that there was ample evidence adduced at trial to prove that the defendant did participate in the robbery. We agree with the state.

"To justify a conviction as an accessory, the state must prove both that the defendant had the intent to aid the principal and that, in so aiding, he had the intent to commit the crime. . . . Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the [principal] must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and willingly assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." (Internal quotation marks omitted.) Id., 404. "Mere knowledge that a crime is going to be committed is not

---

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, *he or another participant in the crime* . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." (Emphasis added.)

[3] Because the defendant was charged as an accessory, the state was required to prove that the defendant, while acting with the intent required for robbery in the first degree, solicited, requested, commanded, importuned or intentionally aided another person to engage in robbery in the first degree. See General Statutes § 53a-8 (a).

sufficient to establish liability as an accessory if the defendant does not encourage or intentionally aid in the commission of the crime." *State* v. *Aparo*, 223 Conn. 384, 404, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 122 L. Ed. 2d 785 (1993). "It is . . . for the trier of fact to determine whether the defendant was innocently present at the scene of the crime"; *State* v. *McClendon*, 56 Conn. App. 500, 506, 743 A.2d 1154 (2000); or whether he knowingly and willingly joined in the robbery with Jones, Smith and Bazemore.

In the present case, Jones testified that the defendant, who had agreed to commit the robbery, was present at the CVS in a stolen vehicle with Bazemore, the driver of the stolen getaway car, while that robbery was committed. This evidence, considered with the testimony of Jones indicating that the defendant knew that the stolen automobile was to be used during the commission of the robbery and that the defendant received a one-quarter share of the proceeds, was sufficient to permit the jury reasonably to infer that the defendant actively participated in the robbery by aiding and abetting the others. We agree with the state that the jury reasonably could have found that the defendant was a lookout, a role that he had previously played inside the KFC. The evidence, therefore, supports a finding that the defendant was an accessory to the robbery beyond a reasonable doubt. See id.; see also *State* v. *Miller*, 59 Conn. App. 406, 412–14, 757 A.2d 69 (2000), cert. denied, 255 Conn. 942, 769 A.2d 60 (2001). Accordingly, we conclude that there was sufficient evidence to support the defendant's conviction of robbery in the first degree as an accessory for the CVS robbery.

B

The defendant next claims that there was insufficient evidence to convict him of conspiracy to commit robbery in the first degree at the CVS. Specifically, the

defendant argues that there was no evidence produced at trial that would have enabled the jury to find reasonably that he violated the conspiracy statute, § 53a-48 of the Penal Code. We are not persuaded.

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." See also *State* v. *Johns*, 184 Conn. 369, 370 n.2, 439 A.2d 1049 (1981).

We conclude that the jury reasonably could have found that the defendant conspired to commit robbery at the CVS. Jones testified that the defendant and the other perpetrators discussed robbing the CVS and that the four men all agreed to participate in the robbery. To facilitate the robbery, Jones testified that the four men discussed stealing a Nissan Maxima. Jones also testified that the men specifically selected the Maxima for the robbery because it was "newer, faster" and because the men did not want to commit a robbery with one of their own cars. Thereafter, a Maxima was stolen by Bazemore and, in furtherance of the conspiracy, the four men drove to the CVS, with Jones and Smith carrying handguns, which Jones and Smith carried into the pharmacy. To steal money, Smith and Jones pointed these guns at the people on the premises of the CVS. From the testimony, the jury reasonably could have inferred that the defendant intentionally agreed with the other individuals to commit robbery in the first degree and, as to the overt acts, that the defendant and the other conspirators rode to the CVS in a vehicle stolen for the purpose of using it during the robbery, and, while Smith and Jones entered the CVS armed with handguns, the defendant remained in the vehicle to serve as a lookout as he had done previously inside the KFC, while Bazemore served as the driver. See *State*

v. *Garner*, 270 Conn. 458, 472–73, 853 A.2d 478 (2004); *State* v. *Gosselin*, 169 Conn. 377, 381, 363 A.2d 100 (1975).

Accordingly, on the basis of the evidence presented at trial and the reasonable inferences that could be drawn therefrom, we conclude that there was sufficient evidence from which the jury reasonably could have found beyond a reasonable doubt that the defendant was guilty of conspiracy to commit robbery in the first degree at the CVS.

### C

The defendant also argues that the state failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt as to any of the charged crimes. Specifically, the defendant contends that Jones' testimony was not credible as a matter of law because Jones "had a motive for falsely implicating the defendant, and a motive for maintaining that lie and testifying against him." This claim merits little discussion.

It is well established that "[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Keith B.*, 95 Conn. App. 643, 649, 897 A.2d 725, cert. denied, 279 Conn. 907, 901 A.2d 1227 (2006).

In the present case, the defendant has not demonstrated that it was unreasonable for the jury to have relied on Jones' testimony. During trial, the defendant, through cross-examination and argument, attempted to

discredit the testimony of Jones.[4] The arguments raised by the defendant on appeal with regard to Jones' credibility are arguments that the defendant properly made before the jury and which were properly considered by the jury in determining what weight to afford Jones' testimony. See *State* v. *Osoria*, 86 Conn. App. 507, 515, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005). "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *State* v. *Keith B.*, supra, 95 Conn. App. 649. Accordingly, we conclude that Jones' testimony properly was before the jury, and, when considered in light of the other testimony introduced at trial, provided an evidentiary basis for the convictions. There was evidence at trial from other witnesses demonstrating that, after the KFC robbery, the defendant was found with Smith in Smith's automobile by the Hartford police. There was also evidence that a third party[5] escaped capture shortly after Smith's automobile was used by four men, who had abandoned the stolen Maxima with its motor running and its lights turned off.

## II

The defendant also claims that the court improperly instructed the jury that it could find, as it did, the defendant guilty of the robbery of Jasmine Rodriguez, a CVS

[4] During trial, Jones testified that in exchange for testifying against the defendant, Smith and Bazemore, the state would recommend that Jones receive a sentence of twenty years incarceration, with execution of the sentence suspended after four and one-half years for a number of armed robberies.

[5] During trial, Jones testified that after he left Bazemore's house with the defendant and Smith, he escaped from Smith's automobile when it was stopped by the police.

customer, on the basis of a theory of conspiratorial liability found in *Pinkerton* v. *United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), and *State* v. *Walton*, 227 Conn. 32, 630 A.2d 990 (1993).

As a preliminary matter, we note that the defendant concedes that these claims were not preserved at trial. At the conclusion of evidence, the court, which had furnished all counsel with a written proposed charge, held a charging conference with counsel in which the *Pinkerton* charge was discussed extensively, and it also entertained additional written and oral requests to charge. Counsel for the defendant stated on the record that he had nothing to add and had no disagreement with the court's summary at the charging conference. Also, at the conclusion of the court's jury instructions, which were given to the jury both orally and in writing, counsel for the defendant took no exceptions to the charge. He therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] Under *Golding*, a "defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. In considering these claims, we may "respond to the

---

[6] Because the record is adequate for our review and the claim is of constitutional magnitude, we will review these claims. See *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003) (claim of improper jury instruction on *Pinkerton* liability is of sufficient constitutional magnitude for *Golding* review).

defendant's claim by focusing on whichever [*Golding*] condition is most relevant in the particular circumstances." Id., 240. Because we conclude that the court's *Pinkerton* instruction was proper, the defendant's claims must fail under the third prong of *Golding*.[7]

## A

On appeal, the defendant claims that the court improperly instructed the jury that it could find him vicariously guilty of the robbery of Jasmine Rodriguez. In support of this claim, the defendant posits that because the evidence established that he merely was present outside the CVS when Jasmine Rodriguez was robbed, it was improper under *State* v. *Diaz*, 237 Conn. 518, 679 A.2d 902 (1996), for the court to give a *Pinkerton* instruction. The defendant also argues that even if he was a member of a conspiracy, the court's instruction was unwarranted because the robbery of Jasmine Rodriguez, a CVS customer, was not "integral to the achievement of the conspiracy's objectives." (Internal quotation marks omitted.) We disagree.

"Under the *Pinkerton* doctrine . . . a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy. . . . The rationale for the principle is that, when the conspirator [has] played a necessary part in setting in motion a discrete course of criminal conduct, he should be held responsible, within appropriate limits, for the crimes committed as a natural and probable

---

[7] Accordingly, plain error review is inappropriate. Practice Book § 60-5 provides in relevant part: "The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Because we conclude that the defendant's argument fails on its merits, we need not address the defendant's claim of plain error. See *State* v. *Rouleau*, 204 Conn. 240, 243, 528 A.2d 343 (1987) (declining to address claim of plain error when reviewable under predecessor of *Golding*).

result of that course of conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Garner*, supra, 270 Conn. 484. Our Supreme Court has explained that "one natural and probable result of a criminal conspiracy is the commission of *originally unintended crimes*. When the defendant has played a necessary part in setting in motion a discrete course of criminal conduct . . . he cannot reasonably complain that it is unfair to hold him vicariously liable, under the *Pinkerton* doctrine, for the natural and probable results of that conduct that, although he did not intend, he should have foreseen." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 499, 820 A.2d 1024 (2003). Only when "the nexus between the defendant's role in the conspiracy and the illegal conduct of a coconspirator is so attenuated or remote . . . would [it] be unjust to hold the defendant responsible for the criminal conduct of his coconspirator." (Internal quotation marks omitted.) Id., 493.

In the present case, as we have observed, evidence was submitted establishing that the defendant was present when the robbery of the CVS was planned and was committed, participated in the use of a stolen automobile used during the commission of the robbery, remained with Bazemore in the vehicle at the CVS while Jones and Smith masked their faces and entered the CVS armed with pistols, received a one-quarter share of the proceeds and had earlier served as a lookout during the KFC robbery. We conclude, therefore, that the defendant's participation in the conspiracy was not so attenuated or remote that it would be unjust to hold him responsible for the criminal conduct of his coconspirators. See id.

The defendant also argues that Smith's robbery of a customer during the robbery at the CVS was not integral to the object of the conspiracy. This argument is belied

by the nature of an armed robbery of a retail store during business hours, which involves not an offense where the store itself is the victim, but rather, the victims are the individuals in the store facing armed men demanding money. It is for this reason that robbery has been described by our Supreme Court as an offense against a person. See *State* v. *Lytell*, 206 Conn. 657, 666–67, 539 A.2d 133 (1988).

In the present case, as to the robbery of the customers present in the CVS, we note that, previously, during the robbery at the KFC, Smith robbed the assistant manager of her own money at gunpoint while the defendant was in the restaurant acting as a lookout. On the basis of the evidence introduced at trial, therefore, the jury reasonably could have concluded that the object of the conspiracy was to take money forcibly at gunpoint from individuals found in the CVS during business hours. A retail business itself cannot be robbed at gunpoint. It is those on the premises who experience that terror and turn over money who are robbed. Accordingly, we conclude that the court properly instructed the jury that it could find the defendant guilty of the robbery of Jasmine Rodriguez on the basis of conspiratorial liability under the *Pinkerton* doctrine. Therefore, a constitutional violation does not clearly exist, and the defendant's claim fails under the third prong of *Golding*.

B

The defendant next claims that even if the evidence supported the court's *Pinkerton* instruction, such instruction was incomplete, and, therefore, "the jury was misled as to how to correctly apply *Pinkerton* . . . ." Relying on *State* v. *Diaz*, supra, 237 Conn. 529, the defendant asserts, on appeal for the first time, that a valid *Pinkerton* instruction must include precise language informing the jury that a conspirator cannot be

held liable for criminal offenses committed by a coconspirator unless "the defendant was a full partner in the illicit venture and the coconspirator conduct for which the state has sought to hold [the defendant] responsible was integral to the achievement of the conspiracy's objectives . . . ." We do not agree.

The standard of review for claims of instructional impropriety under *Golding* is well established. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007). "An accurate jury instruction cannot be the basis for a showing that the defendant was clearly deprived . . . of a fair trial." (Internal quotation marks omitted.) *State* v. *Sanko*, 62 Conn. App. 34, 40–41, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001).

Here, having considered the court's jury instructions in their entirety, we conclude that the court correctly charged the jury regarding coconspiratorial liability as set forth by our Supreme Court in *State* v. *Peeler*, 271

Conn. 338, 456 n.89, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005), and *State* v. *Coltherst,* supra, 263 Conn. 488 n.16.[8] The court, in its final instructions, did not utilize the *Diaz* language pertaining to the extent of the defendant's participation in the conspiracy. Our Supreme Court has noted, however, that a *Pinkerton* instruction is not required to contain the precise *Diaz* language but, rather, should instruct the jury that it must find that

[8] The court instructed the jury as follows: "I will now instruct you on the principle of vicarious liability, which is separate and distinct from accessorial liability and which applies to the robbery in the first—to the robbery in the first degree charges against . . . [the defendant] concerning the alleged robbery of Jasmine Rodriguez. There is a doctrine in our law that provides that once a defendant's participation in a conspiracy is established beyond a reasonable doubt, he is responsible for each of the criminal acts of the other coconspirators which is within the scope of and in furtherance of the conspiracy. . . . This principle of vicarious liability means that if you conclude that a defendant is guilty of the crime of conspiracy to commit robbery in the first degree beyond a reasonable doubt, but that the defendant personally did not commit the robbery of Jasmine Rodriguez, then you would go on to determine whether sufficient evidence has been proven to convince you beyond a reasonable doubt that another member of the conspiracy did, in fact, commit the crime of robbery in the first degree of Jasmine Rodriguez . . . . If you conclude beyond a reasonable doubt that . . . Smith did commit the crime of robbery in the first degree of Jasmine Rodriguez, and if that specific robbery was within the scope of and in furtherance of the conspiracy of which you have concluded that the defendant was a member, then the defendant would be guilty of the robbery in the first degree of Jasmine Rodriguez even though he did not personally commit the robbery . . . ."

Shortly thereafter, the court instructed the jury that "the intentional robbery in the first degree of Jasmine Rodriguez must be found by you to have been a necessary or natural consequence of the unlawful agreement, the conspiracy to commit robbery [in the] first degree during the CVS incident. And second, that the robbery in the first degree of Jasmine Rodriguez was reasonably foreseeable to the coconspirators sought to be held responsible, that is, the [defendant] . . . as a natural consequence of the unlawful agreement, the conspiracy to commit robbery in the first degree during the CVS incident." The court further instructed the jury that before it could find the defendant guilty of the robbery in the first degree of Jasmine Rodriguez, it would first have to determine that Smith actually committed the crime and that such crime was "reasonably . . . within [the coconspirators'] contemplation that a patron of CVS might also be robbed."

the criminal offense committed by the coconspirator was within the scope of the conspiracy, was in furtherance of it and was reasonably foreseeable as a necessary or natural consequence of the conspiracy. *State* v. *Lopez*, 280 Conn. 779, 820 n.30, 911 A.2d 1099 (2007); *State* v. *Peeler*, supra, 456 n.89. Although our Supreme Court, in *Diaz*, imposed limitations on the scope of *Pinkerton* liability, these limitations arise when the nexus between the defendant's role in the conspiracy and the crimes of a coconspirator is attenuated or remote. *State* v. *Diaz*, supra, 237 Conn. 529–30.

In this case, the evidence reasonably demonstrated that the armed robbery of persons on the premises of the CVS was the intended object of the conspiracy as charged in the information. The court did not instruct the jury that the defendant could be liable for unintended crimes or that intent to commit robbery in the first degree was not required for *Pinkerton* liability. Rather, the court repeatedly and forcefully instructed the jury that the defendant must have intended that conduct constituting a robbery in the first degree be performed to be guilty of conspiracy to commit such robbery. We accordingly conclude that the jury did not receive an incomplete instruction as to *Pinkerton* liability to the prejudice of the defendant. If anything, the court's instructions may have made it *more* difficult for the jury to find the defendant guilty by suggesting that, in *addition* to finding that the defendant had the specific intent to commit the offenses, the jury had to find that he had entered into an agreement or joint criminal enterprise with his confederates. See *State* v. *Lopez*, supra, 280 Conn. 823.

With respect to the defendant's argument that the court was required to charge the jury that it must find that the defendant was a full partner in the illicit venture and that the coconspirator's conduct for which the state sought to hold the defendant responsible was integral

to the achievement of the conspiracy's objectives, the instruction in this case requiring the jury to find that the defendant intended to commit the offense of first degree armed robbery at the CVS, and what the jury reasonably could have found from the evidence provided the defendant with protection from being unjustly held accountable for "additional offenses of which he was completely unaware and which he did not influence at all." (Internal quotation marks omitted.) *State* v. *Walton*, supra, 227 Conn. 51; see also *State* v. *Diaz*, supra, 237 Conn. 529.

Our review of the record thus reveals that the challenged instructions were not misleading and were "sufficiently correct in law for the jury to understand its responsibility." *State* v. *Peeler*, supra, 271 Conn. 456 n.89. Because our review of the record fails to reveal any impropriety, the court's jury instruction did not clearly deprive the defendant of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 240. Accordingly, the defendant's claim fails to meet the third prong of *Golding*.

The judgments are affirmed.

In this opinion the other judges concurred.